UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LM INSURANCE CORPORATION,**

    **Plaintiff,**

v.                                                                      Case No: 5:19-cv-274-Oc-30PRL

**OCCIDENTAL FIRE AND CASUALTY
COMPANY OF NORTH CAROLINA
and HARNAUTH SEWSANKAR,**

    **Defendants.**

_____

### REPORT AND RECOMMENDATION[1]

This declaratory judgment action is before the Court upon referral of Defendant Occidental Fire and Casualty Company of North Carolina's ("Occidental") motion to dismiss the amended complaint (Doc. 29), to which Plaintiff Liberty Insurance Corporation ("Liberty") has responded. (Doc. 32). For the reasons explained below, I recommend that the motion to dismiss be denied.

**I.   BACKGROUND**

This case arises out of a motor vehicle accident and involves a dispute about insurance coverage between Plaintiff Liberty and Defendant Occidental. Liberty seeks a determination regarding which of two policies are primary, as well as the amount of uninsured or underinsured motorist ("UM") coverage that Occidental must provide to Defendant Harnauth Sewsankar.

As alleged in the amended complaint (Doc. 26), on September 9, 2017, Defendant

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.   See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

Harnauth Sewsankar was involved in a motor vehicle accident while operating a 2008 Nissan Maxima. Sewsankar was the named insured under a personal automobile insurance policy, No. AO5-251-014011-4077, issued by Liberty. The only vehicle listed under the Liberty policy, however, was a 2009 Nissan Altima. The Liberty policy provides UM coverage for $100,000 per person, and $300,000 per accident.

Meanwhile, although the parties dispute this, the amended complaint alleges that the 2008 Nissan Maxima operated by Sewsankar during the accident was owned by Main Street Collision, Inc. Main Street was insured by Occidental under a commercial auto policy with liability coverage of $100,000 and UM coverage for $20,000.

Defendant Sewsankar has presented claims for UM coverage to both Liberty and Occidental, including claims that he needs continued medical care. Sewsankar has demanded the UM coverage limits of the Liberty policy ($100,000) to settle his claim. (Doc. 26-4).

On May 11, 2018, Liberty sent a letter to Occidental stating that Sewsankar may qualify for UM coverage under the Occidental policy and requesting information regarding Occidental's position as to coverage under its policy. (Doc. 26-5). Occidental denied coverage to Sewsankar and issued a coverage position letter to Liberty. (Docs 26-6 & 26-7). Occidental denied the claim because "the vehicle being driven by Mr. Sewsanker was not owned by the insured; Mr. Sewsanker himself is not an insured; and Mr. Sewsanker was the liable party in the accident." (Doc. 26-6). Occidental also issued a coverage position letter to Liberty. (Doc. 26-7). Occidental concluded that its policy did not apply to the loss, and Occidental would not be making any payments related to the loss. (Doc. 26-7).

On August 2, 2018, Liberty sent a letter to Occidental requesting additional information regarding Occidental's coverage position. Occidental responded that Sewsankar did not qualify as

an insured under its policy and because he was the at-fault party, UM benefits were not available to him. (Doc. 26-9)

Then, on September 6, 2018, Liberty responded to Sewskanar's counsel as follows:

> Main Street Collision was insured by Occidental Insurance Company or an affiliated entity under insurance policy number CG0016091. The insurance policy provided uninsured/underinsured motorist coverage in the amount of $20,000. Based on our review of the Occidental insurance policy, Mr. Sewsankar should qualify as an insured for purposes of uninsured/underinsured motorist coverage. We understand that Occidental Insurance Company denied coverage on the grounds that Main Street Collision did not own the Maxima and based on the Combined Garage Exclusion. However, Mr. Sewsankar's testimony was that Main Street Collision did own the vehicle. In addition, the Combined Garage Exclusion applies if the Maxima had been "surrendered" to Mr. Sewsankar pursuant to a "sale, conditional sale, gift, abandonment or lease." Based on our understanding of the facts, Main Street Collision did not surrender the vehicle to Mr. Sewsankar and there was no "sale, conditional sale, gift, abandonment or lease."

(Doc. 26-10). Liberty stated that the "LM Insurance Corporation policy provides: Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance." (Doc. 26-10). Liberty further explained that "Mr. Sewsankar testified that Main Street Collision owned the Maxima. Thus, the Occidental Insurance Company policy would provide primary uninsured/underinsured motorist coverage." (Doc. 26-10).

The exhibits to the amended complaint shed some light regarding the source of the dispute regarding the ownership of the Maxima (the vehicle involved in the accident). Sewsankar is reported to have testified that he "paid Main Street Collision $1,000 to have an 'interest in buying the car' while the Maxima was undergoing repairs. If the repairs were not successful, the deposit would apply to a different vehicle." (Doc. 26-10). Based on this testimony, Liberty alleges that the Maxima was owned by Main Street and contends that it was never surrendered to Sewsankar and was never titled or registered in Sewsankar's name. (Doc. 26, p. 3). Meanwhile, it is Occidental's

position that Main Street did not own the Maxima, or that it was excluded by the combined garage exclusion.

In any event, Liberty contends that it is unsure of its obligations to Sewskanar because of the position taken by Occidental, and thus seeks a declaratory judgment "as to whether or not Occidental is under an obligation to provide $100,000 or $20,000 in UM coverage and whether Occidental's policy is primary to the Liberty policy." (Doc. 26, p. 6). Liberty seeks declaratory judgment against Occidental and Sewsankar pursuant to the 28 U.S.C. § 2201 and asks the Court: (1) to declare that Liberty's UM coverage is excess to Occidental's UM coverage; and (2) to make a determination regarding the amount of UM coverage afforded from Occidental.

## II. LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences from there. *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit uses a two-pronged approach in applying the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

Here, Plaintiff brings suit under the Declaratory Judgment Act, which provides, in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The purpose behind the Declaratory Judgment Act is to afford a new form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989). Specifically, the Act permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty. *Id*.

The Declaratory Judgment Act grants to the federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201. An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937). An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic. *See Texas v. United States*, 523 U.S. 296, 300 (1998); *Aetna Life Ins. Co.*, 300 U.S. at 240–41. On the other hand, a court should permit a claim for declaratory judgment to proceed where declaratory relief would (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004).

### III. DISCUSSION

Occidental moves to dismiss the amended complaint and presents three arguments in support of its motion. First, Occidental argues that Liberty fails to allege a justiciable controversy for Declaratory Judgment, and next argues that the amended complaint should be dismissed because Liberty is seeking an improper advisory opinion. These first two arguments are largely duplicative of each other and will be addressed together. Finally, Occidental argues that the amended complaint should be dismissed because it fails to state a proper cause of action for declaratory relief in that it seeks a determination of fact or about an unambiguous provision of an insurance contract.

### A. Justiciability

First, Occidental takes the position that Liberty has failed to allege a justiciable controversy because Liberty has not asserted an affirmative coverage position as to the rights that it owes Sewsankar independent of Occidental's coverage position. Occidental contends that, unless or until Liberty asserts that it owes Sewsankar coverage under its policy of insurance, there is no actual or imminent injury upon which to grant declaratory relief, and the injury is "mere speculation and conjure." (Doc. 29, p. 8). In support of this argument, Occidental has cited case law articulating general principles of justiciability, such as *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981), a case involving a claim for declaratory judgment in an antitrust context.

Occidental also cites *Zee v. Ironshore Specialty Ins. Co.*, No. 12-61222-CIV, 2012 WL 12860122, at *3 (S.D. Fla. Nov. 30, 2012). In *Zee*, the plaintiff's decedent suffered injuries while a resident at a facility insured by the defendant. The plaintiff sued the defendant insurance company seeking a declaration regarding the amount of the policy limits of insurance coverage that existed for the personal injury negligence claims and whether there was any general liability coverage. *Id.* at *1. The court dismissed the case as premature, stating that the plaintiff's complaint was only recently filed and the defendant's liability was "unknown and may never be established." *Id.* at *3. In doing so, the court also relied heavily upon Florida's nonjoinder of insurers statute and noted that the plaintiff did not have standing until a settlement or judgment was obtained against the insurance company. *Id.* at *3.

In support of its position, Occidental also cites *Nat'l Fire & Marine Ins. Co. v. Palm Springs Gen. Hosp., Inc.*, No. 16-61852-CIV, 2016 WL 10587943, at *1 (S.D. Fla. Oct. 28, 2016), a case involving a dispute about the duty to defend or indemnify, and *Allied Mineral Prod., Inc. v. OSMI,*

*Inc.*, No. 15-81753-CIV, 2016 WL 4479392, at *8 (S.D. Fla. Aug. 25, 2016), aff'd, 870 F.3d 1337 (Fed. Cir. 2017), a patent infringement case.

Primarily, however, Occidental relies upon two unreported cases from the Southern District of Florida. First, Occidental relies upon *Tobon v. Am. Sec. Ins. Co.*, No. 06-61912-CIV-SEITZ, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007). In *Tobon*, the court analyzed claims under Florida's declaratory judgment act, Fla. Stat. § 86.011 and determined that the complaint did not satisfy essential pleading requirements because it did not identify a provision of the contract in need of construction. *Id.* at *2. A review of *Tobon* reveals that its discussion of declaratory relief is focused entirely on the interpretation of Florida's declaratory judgment act under Florida case law, making it of little relevance to the instant case which is brought under the federal Declaratory Judgment Act.

Occidental also relies upon *Young v. Lexington Ins. Co.*, No. 18-62468-CIV, 2018 WL 7572240, at *3 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, No. 18-62468-CIV, 2019 WL 1112274 (S.D. Fla. Jan. 9, 2019). In *Young*, the court considered claims arising from an insurance company's alleged underpayment for property damage sustained during Hurricane Irma. *Id.* at *2. The court dismissed Count II of the complaint seeking declaratory judgment and cited dicta from Florida state case law that the Declaratory Judgment Act is "not to be used as a tool to advise attorneys as to the proper path to pursue, nor is the Act to be employed to determine purely factual issues," citing *Kelner v. Woody*, 399 So. 2d 35, 38 (Fla. 3d DCA 1981). In doing so, the *Young* court appears to have conflated, at least to a degree, interpretation of Florida's declaratory judgment act with the federal Declaratory Judgment Act. *Kelner v. Woody*, the case cited by the *Young* court, is a Florida state court decision case involving interpretation of Florida state law. And importantly, the *Young* court concluded that Count II was duplicative of Count I, which

presented a straightforward breach of contract claim under the relevant policy. Ultimately, the *Young* plaintiff's claim proceeded against her insurer. *See Young*, 2018 WL 7572240 at *4. Here, too, Occidental appears to conflate Florida state law regarding Florida's declaratory judgment statute and federal case law interpreting the Declaratory Judgment Act.

Occidental characterizes Liberty's amended complaint as a "thinly veiled attempt to avoid taking a coverage position," and asserts Liberty does not have a "real or imminent injury" because it has failed to assert an affirmative coverage position as to the rights it owes Sewsankar under the policy of insurance that it issued to Sewsankar. Occidental's position is perplexing, however, because Liberty has taken a coverage position, specifically that Main Street did not surrender the vehicle to Sewsankar, and therefore the Occidental policy would provide primary UM coverage. The Court agrees that whether the Occidental policy provides coverage that is primary to any UM coverage provided by the Liberty policy, and if so, the amount of the UM coverage provided by the Occidental policy is a substantial controversy between parties having adverse legal interests. Unlike the plaintiff in *Young*, Liberty is not in privity of contract with Occidental and therefore lacks the option of a breach of contract claim. Occidental has taken the position that its coverage does not apply to the subject accident and Sewsankar's claims. From Liberty's perspective, that circumstance creates the need for clarifying the respective legal rights and obligations at issue.

Prior cases decided by this Court support the maintenance of Liberty's claim under the Declaratory Judgment Act. This court has previously held that an actual case or controversy existed for the purposes of a declaratory judgment where an insurance company sought a determination of whether it was bound under its policies to defend or indemnify an insured. *See Fireman's Fund Ins. Co. v. The Goldfield Corp.*, No. 614CV661ORL31KRS, 2014 WL 12617913, at *4 (M.D. Fla.

July 30, 2014), *report and recommendation adopted sub nom. Fireman's Fund Ins. Co. v. Goldfield Corp.*, No. 614CV661ORL31KRS, 2014 WL 12617780 (M.D. Fla. Sept. 8, 2014).

Likewise, in *United Nat'l Ins. Co. v. Cmty. P'ship for Children, Inc.*, No. 610CV1148ORL35GJK, 2010 WL 11626977, at *4 (M.D. Fla. Aug. 25, 2010), this Court considered whether a claim for declaratory judgment to determine an insurer's duties under a policy and exclusions presented an actual case or controversy. The Court denied a motion to dismiss and recognized that the exercise of jurisdiction was "supported by the purposes of the Declaratory Judgment Act, which provides a mechanism to adjudicate disputes when the plaintiff is unsure of its duties and seeks to avoid either a breach of a legal duty or unnecessary expenditures in the absence of such a duty." *Id*.

Here, the controversy is not speculative. Liberty has been presented with a claim for its policy limits by Sewsankar, as well as Occidental's position that it has denied coverage entirely. Sewsankar has threatened Liberty with both personal injury claims and has filed a claim for bad faith under Florida Statute § 624.155. Meanwhile, although the parties dispute the factual basis for these allegations, Liberty contends that the vehicle involved in the accident was owned by Main Street and never surrendered to Sewsankar. Under these circumstances, it is understandable that Liberty is unsure of its duties and seeks to avoid either of breach of a legal duty or unnecessarily paying a claim or unnecessary expenditures. The undersigned finds that Liberty's claims are appropriately brought under the federal Declaratory Judgment Act.

### B.  Form of Relief Sought

Finally, Occidental contends that the amended complaint must be dismissed because it fails to state a proper cause of action for declaratory relief. Occidental argues that Liberty seeks a determination of a factual issue, as opposed to a term of the contract that is ambiguous and in need

of interpretation. Citing the cases mentioned above, Occidental contends that Liberty's claim must be dismissed because it seeks to resolve a factual or evidentiary issue.

Occidental's support for this argument suffers from the same flaw as its earlier argument, conflating Florida law and federal law regarding the Declaratory Judgment Act. This Court has previously rejected the argument that declaratory relief cannot be based on an unambiguous insurance policy. *See Clark v. Rockhill Ins. Co.*, No. 618CV780ORL37KRS, 2018 WL 4926487, at n. 3 (M.D. Fla. Sept. 21, 2018), *report and recommendation adopted sub nom.*, No. 618CV780ORL37KRS, 2018 WL 4924348 (M.D. Fla. Oct. 10, 2018).

Occidental's arguments in support of dismissal of the amended complaint are unavailing. Based on the facts alleged in the amended complaint, a justiciable controversy exists over whether Occidental is under an obligation to provide $100,000 or $20,000 in UM coverage and whether Occidental's policy is primary to the Liberty policy. A declaratory judgment would serve a useful purpose in settling the parties' legal obligations and would afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. *See Mid–Continental Cas. Co. v. Devonshire Props., Inc.*, No. 8:15-cv-1049-T-17JSS, 2015 WL 12831311, at *2 (M.D. Fla. Nov. 12, 2015) (finding insurance coverage dispute sufficiently ripe where declaration would settle the parties' legal obligations and "help to facilitate an early resolution of the parties' coverage issues").

## IV. RECOMMENDATION

For the reasons explained above, I respectfully recommend that Occidental's motion to dismiss (Doc. 29) be denied.

Recommended in Ocala, Florida on April 30, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy